**No. 43881.**—Protest 677475–G of Consolidated Produce Co. (Los Angeles).

CLINE, Judge: This is a suit against the United States, arising at the port of Los Angeles, in which the plaintiff seeks to recover duties assessed at the rate of 3 cents per pound under paragraph 772 of the Tariff Act of 1930 on certain fresh tomatoes which are claimed to have been condemned by the board of health and destroyed within 10 days after landing. The plaintiff claims that allowance should have been made by virtue of the provisions of section 506 (2) of the Tariff Act of 1930.

This case is before the court on rehearing. It was decided in *Consolidated Produce Co. et al.* v. *United States*, T. D. 47971, adversely to the plaintiff's contention, but a timely application for rehearing was filed and granted and additional evidence was submitted at the trial on rehearing, C. D. 246.

At the original trial the plaintiff called Mr. Frank W. Schoeppe, a liquidator in the office of the collector, who testified that he liquidated the entry covered by the protest; that he refused to allow refund of duty on 1,086 pounds of tomatoes for which board of health certificates of condemnation were filed with the collector; and that his refusal was based on a report of the inspectors.

The next witness called by the plaintiff was Mr. Ernest A. Morey, superintendent of the importing firm, who testified that at the time of entry he personally handled all the tomato shipments imported by the Consolidated Produce Co.; that when the tomatoes were imported they were kept in separate lots and he attached lot numbers to each box; that a portion of this particular shipment was condemned by the health authorities; that the segregation of the condemned tomatoes from the good tomatoes was under his personal supervision; that two condemnation slips, one relating to 608 pounds, dated February 8, and the other relating to 478 pounds, dated February 7, were received by him and they covered tomatoes condemned by the city health department; that the condemned tomatoes were hauled away by the city garbage collectors; that the condemnation slips, together with a notice of the condemnation, were mailed, on his request, by his customs broker to the collector. It also appears that he filed an affidavit or affidavits which were offered in evidence, but counsel for the defendant objected thereto and counsel for plaintiff withdrew the exhibit and offered in evidence the notice of condemnation and the certificates of the health department. On cross-examination the witness testified that the health department representatives came to his place of business every morning and examined perishable merchandise; that the sorting of the tomatoes in the shipment here in question was done by his employes; that the health department representative gave him tickets for all the rotten tomatoes showing that a certain number of pounds of tomatoes had been condemned · in his establishment. On redirect examination the witness testified that the lot number and the entry number covering the. tomatoes were written on the back of the certificates by himself; that he got the information from his records; that he received a shipment every week by boat and as soon as the boat arrived and the merchandise was cleared, his customs broker gave him the entry number and he made a record of the entry number together with the lot number of the shipment; that every one of the boxes of tomatoes was stamped with the lot number; that when the tomatoes were sorted a garbage can was weighed and marked with the weight and the rotten tomatoes were put in the can and when it was filled the can was weighed under his supervision and the net weight of the rotten tomatoes thus obtained; that the condemnation tickets for the rotten tomatoes in the whole shipment, covering the rotten tomatoes in the garbage cans, were received by him; that usually the cans of rotten tomatoes

are held until a customs inspector comes to check them up and then the rotten tomatoes are drawn away by the garbage collectors; that in this case 1,086 pounds of rotten tomatoes were condemned by the health department; that he made an application to the collector for refund of duty on that amount but it was denied; that the condemnation was made within 10 days after landing and within 5 days thereafter he instructed his customs broker to file a notice with the collector.

A letter from a customs broker and two certificates of the health department, covering 478 pounds and 608 pounds of tomatoes, respectively, from lot number 1045 and entry number 5274 were received in evidence and marked "Collective Exhibit 1." The official dating stamp on the papers shows that they were filed with the collector on February 9, 1933.

On rehearing, Mr. Schoeppe was recalled and testified that, subsequent to the receipt of the documents in Exhibit 1, that is on April 1, 1933, he instructed two inspectors to make an investigation and report, and that the customs inspectors made a report to him on the bottom of the notice which he issued. The document was received in evidence and marked "Exhibit 3." This exhibit shows that 595 pounds of tomatoes from the shipment were condemned and quantity established and that there was no record of other dumpage on this entry. On the bottom of the exhibit appears the following note:

1086#—No record of this dumpage. Importer evidently sorted tomatoes and this accumulation of dumpage was destroyed without being weighed or seen by an inspector. Under these circumstances no identity could be established.

The witness testified further that Exhibit 1 was filed with the collector on February 9, 1933. The plaintiff moved in evidence certain mimeographed letters which had been received as Collective Exhibit 3 in protest 677450–G and without objection they were received and marked "Collective Exhibit 2, 677475–G." The witness testified that he would give the same answers with respect to this exhibit as he did in the hearing of protest 677450–G which was tried at the same calendar.

The witness testified further that he did not know what date the inspector's report on Exhibit 3 was filed with the collector and that his testimony with regard to the investigation and inspection made by the inspectors in that case would be the same as he testified in the hearing of protest 677450–G; that he prepared the collector's answer to the protest in this case giving the following as his reasons for disallowing the importer's claim:

Condemned tomatoes were disposed of by importer before same could be weighed or seen by an Inspector; hence, before they could be identified, a requisite for any allowance under Sec. 506 (2), Tariff Act of 1930, and Art. 807 (a), Customs Regulations of 1931.

The report contains also seven pages of mimeographed sheets of paper, three of the sheets being duplicates of the documents in Collective Exhibit 2. Two of the six copies of letters attached are dated subsequently to the date of the entry in this case. Two of the copies of letters in the report are addressed to the collector of customs by the Associated Produce Dealers and Brokers of Los Angeles agreeing to some of the so-called regulations issued by the collector contained in Collective Exhibit 2. These latter letters are both dated subsequently to the entry in this case.

The witness testified further that he did not request the importer to produce proof of the identity and quantity of the condemned portion of the tomatoes prior to liquidation or advise the plaintiff that he was going to reject his claim.

The next witness for the plaintiff was Mr. Ernest S. Glazer who was an inspector in charge at Los Angeles at the time of the importation of the tomatoes covered by the entry herein. He testified that, although he signed the inspector's report, he did not examine the tomatoes covered by the entry and did not make any

attempt to inspect the dumpage either prior to or after the condemnation notices were filed with the collector; that, as far as Collective Exhibit 1 was concerned, his answers in this case would be the same as those in his testimony at the hearing of protest 677450–G. On cross-examination he testified that he made an investigation in conjunction with inspector Wilson. On redirect examination he testified that he made that investigation within a period of 10 days subsequent to April 1, 1933, and that the inspector's report was made immediately thereafter; that in that investigation he and Mr. Wilson perused the records and discussed the merits of the importer's claim, such investigation taking from 30 to 45 minutes, but that investigation did not relate to the claim in the instant shipment alone; that he did not request the importer to furnish any proof of the condemnation; and that the importer did not make claim on sortings from more lugs of tomatoes than were covered by the importation.

The next witness called by the plaintiff was Mr. Samuel C. Wilson. He testified that at the time of the importation herein he was an inspector of customs and that he signed the inspector's report on Exhibit 3 together with Mr. Glazer. When asked if he inspected the condemnation the subject of this protest he answered that he could not answer the question "yes or no," stating "I am afraid I can't answer that without qualifying my answer," and the question was not pressed further. The witness testified that he did not know whether any one else connected with the collector's office inspected the condemned portion of the tomatoes. On cross-examination he explained his procedure in the matter as follows:

On my visit to the importer's premises on the dates preceding the dates of these condemnation notices they were sorting tomatoes which were imported on this particular entry. Some time subsequent to those visits I visited the importer's premises, and Mr. Morey, who was the man who I usually saw in regard to tomatoes * * * he presented me these 2 tickets * * * the ticket which is attached to this Exhibit 1; and I inquired where the tomatoes that were covered by these condemnation tickets were, and he told me they had been removed from their premises, and the tomatoes were not on the premises, as shown on the condemnation ticket, nor as shown on the importer's notice of such condemnation which was filed in the collector's office.

Judge CLINE. Well, then it appears that you did not inspect the merchandise.

The WITNESS. I may have inspected it prior to the time they were condemned.

Judge CLINE. But you have no means of knowing whether or not those were the same tomatoes?

The WITNESS. No

The testimony of the Government officers may have been sufficient to explain their refusal to identify the condemned merchandise, but, as the case is now before the court, the question involved is whether the evidence presented by the plaintiff is sufficient to show the quantity and identity of the condemned tomatoes and not whether the customs officers made a sufficient investigation. The collector's action has the presumption of correctness and the burden rests on the plaintiff to establish his claim.

Collective Exhibit 1 contains two certificates of condemnation showing that the Board of Health of Los Angeles condemned 478 pounds of tomatoes and 608 pounds of tomatoes out of lot 1045 at the Consolidated Produce Co. on February 7 and February 8, 1933. The back of each certificate contains a note giving the entry number, the name of the vessel, the number of lugs of tomatoes sorted, and a stamp containing the name "Consolidated Produce Co., Ltd.," under which appears the name E. A. Morey in handwriting. Those certificates are attached to a letter by a customs broker addressed to the collector of customs notifying him of the two condemnations, giving the entry number, the address of the importer where the merchandise was condemned, the name of the vessel, and the invoice description. This notice meets exactly the conditions imposed upon the importer by section 506 (2) of the Tariff Act of 1930. It is clear that the importer did everything required of him by the statute.

Collective Exhibit 2 consists of the same papers which were introduced in evidence as Exhibits 2 to 6 in the case of *Farmers Produce Co. et al.* v. *United States*, T. D. 49495, concerning which the court said:

There was introduced in evidence (Exhibits 2 to 6) certain mimeographed copies of instructions issued by the collector of customs purporting to prohibit customs supervision of the sorting of perishable merchandise after removal from the custody of the importer, providing that, where more than one shipment was on the floor of the importers' place of business, each shipment must be held in a separate place, that an identification card must be attached to each lot, that allowance shall be made on the first sorting only, and that no previously sorted lot or lots shall be present on the same premises where the sorting of any shipment is taking place. These exhibits do not bear the approval of the Secretary of the Treasury and were not promulgated by him. Therefore, they are not regulations which have the force of law and bind this court. * * *

Counsel for the defendant argues that the evidence adduced fails to identify the condemned merchandise with the shipment herein involved because the persons who did the sorting of the tomatoes were not called as witnesses, citing *Central Films, Ltd.* v. *United States*, C. D. 257, wherein the question involved was whether certain electrical equipment imported for repairs under section 308 of the Tariff Act of 1930 had been reexported within 6 months. The plaintiff called the importer who directed a customs broker to export the merchandise but did not call the customs broker who was claimed to have exported the merchandise and who was the only one that could testify that the merchandise was exported within the required 6-month period. The court said:

It appears that the commodity was exported by a broker who could have given exact testimony as to when this instrument was exported, if it actually was sent out of the country. There is a legal presumption to the effect that where a party does not call a competent witness as to a fact to be proven, who is available, the presumption is that he will not support the fact in question.

The same conditions are not present in this case. Here the merchandise was sorted under the personal supervision of Mr. Morey by persons employed by him. He testified that the condemned merchandise was sorted from the tomatoes covered by this importation and that he had personal charge of the shipment. We are of opinion that the witness had personal knowledge of the transaction and that he was competent to testify whether or not the condemned tomatoes came out of the particular shipment. The persons who sorted the tomatoes were working under his direction and supervision. The identification is practically the same as that covered by protest 677438–G in *Farmers Produce Co. et al.* v. *United States*, *supra*, wherein the court held that the identity of the condemned merchandise was established by the evidence. The court, in reviewing the testimony of the witness, said:

The plaintiff then called Mr. A. F. Goethals, the manager of the importing company. He testified that the shipment of tomatoes covered by protest 677438–G came under his personal supervision; that the tomatoes were brought into the United States by railroad; that his company received from one to five carloads per week during the season; that each car is given a lot number; that each shipment was kept separate in his store; that he employed boys and girls to sort the tomatoes and they worked on only one shipment at a time; that certain tomatoes from the car here involved were condemned by the health authorities; that the tomatoes were segregated under his personal supervision; that he received a condemnation certificate from the health department for 342 pounds of tomatoes out of this shipment on April 25, 1933; that the health inspector put the lot number on the ticket; and that the condemnation was made within ten days after the arrival of the car.

The procedure of the inspector in this case is substantially the same as it was in *Consolidated Produce Co.* v. *United States*, C. D. 246, where the court described his method and examination as follows:

The record shows further that one customs inspector visited the places where the tomatoes were being sorted during the process of sorting; that he called at the Consolidated Produce Co. either on the same day or the day after the 346 pounds of tomatoes were condemned but found that they had been disposed of already, so he wrote on the back of the condemnation certificate the words "not destroyed under customs supervision, no refund;" * * *.

The court held in that case that the dumpage was sufficiently identified.

In the case now before the court, on April 1, 1933, the collector notified the inspectors to investigate the condemnations, as shown by Exhibit 3, whereas the notice of condemnation was filed in the customhouse on February 9, 1933. The collector waited over 7 weeks before he notified the inspectors to investigate. In the case of *Consolidated Produce Co.* v. *United States, supra,* the court commented on the investigation contemplated by article 807 (*a*) of the Customs Regulations of 1931 and the practice of the customs officers in Los Angeles thereunder as follows:

Article 807 (*a*) of the Customs Regulations provides that "upon the receipt of a notice of condemnation the collector shall stamp thereon the date of receipt thereof in the customhouse, and shall cause an investigation to be made by two customs officers" but the collector waited over 3 weeks before directing that an investigation be made, that is, he issued the instructions on May 8, 1933, whereas the notices of condemnation were filed in the customhouse on April 11 and April 17, 1933. Manifestly, the collector did not order an investigation "upon receipt of" the notices of condemnation.

It is obvious that decayed tomatoes could not have been retained on the premises for 3 weeks without becoming a menace to the health of the community. However, the inspector who called to identify the dumpage testified that he made his inspection at the time the tomatoes were being sorted in anticipation of a request by the collector for an examination and report. Such practice does not follow the sequence contemplated by the wording of article 807 (*a*) of the regulations but it appears to be the only logical system of conducting an investigation in such case if the regulation contemplates that the customs officers should examine and weigh the condemned merchandise. Obviously such dumpage could not be retained on the importer's premises for even 5 days, the time which the statute gives the importer to notify the collector of the condemnation, and it is manifest that the statute does not contemplate that the investigation of the customs officers should be limited to weighing and witnessing the disposal of the dumpage.

The record in this case is comparable with that in *Consolidated Produce Co.* v. *United States, supra,* and, in harmony with our decision in that case, we find that the 1,086 pounds of tomatoes covered by this protest out of the shipment herein involved were condemned by the health officers at the importer's premises within 10 days after landing and timely notice of such condemnation was filed in the customhouse and that the tomatoes were disposed of by being taken away by the garbage collectors. We hold that the duty assessed on such condemned merchandise should be refunded. The protest is sustained. Judgment will be entered in favor of the plaintiff.